2000 UT 93

**MACRIS & ASSOCIATES, INC.,**
Plaintiff and Respondent,

v.

**NEWAYS, INC., Thomas E. Mower, and
Leslie D. Mower, Defendants and
Petitioners.**

No. 990859.

Supreme Court of Utah.

Dec. 5, 2000.

D. Frank Wilkins, Chris R. Hogle, Salt Lake City, for plaintiff.

Allen K. Davis, Christopher S. Crump, Wade S. Winegar, Scott T. Temby, Salem, for defendants.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

RUSSON, Associate Chief Justice:

¶1 On writ of certiorari, Neways, Inc., Thomas E. Mower, and Leslie D. Mower (collectively, "Neways") seek reversal of the Utah Court of Appeals' determination that Macris & Associates' ("Macris") claims for fraudulent transfer, successor liability, and alter ego are not barred by res judicata. Neways also claims that the court of appeals erred in not considering whether Macris is precluded by the doctrine of res judicata from pursuing additional contract damages in the present action.

## BACKGROUND[1]

¶2 In August 1989, Macris entered into a distributorship agreement (the "Agreement") with Images & Attitude ("Images"). Pursuant to the Agreement, Macris was to use its time and marketing expertise to build a

---

1. The facts of the litigation and appeal that led to this case can be found in *Macris & Associates v.* *Images & Attitude, Inc.,* 941 P.2d 636 (Utah Ct. App.1997).

"downline organization"[2] within Images's multilevel marketing program. The Agreement specified that Macris was "autoqualified," which, the Agreement stated, meant that the usual distributor requirements of the Images marketing plan were waived and Macris was to be paid at the highest level provided for in the operation's marketing plan for product sales made by the distributors in Macris's downline. The term of the Agreement was to continue "throughout the life of Images," as long as Macris was "active in promoting Images and Images's products."

¶ 3 Subsequently, on March 7, 1991, Macris received a letter from Images informing Macris that its autoqualification status was being suspended for lack of activity. Shortly thereafter, in a letter dated March 29, 1991, Images informed Macris that it was terminating the Macris distributorship entirely. The reasons given for termination were Macris's testing of products after warnings not to do so, lack of activity under the Agreement, and damaging activity to Images and its distributor force.

¶ 4 On April 17, 1991, Macris commenced an action against Images for breach of contract ("*Macris I* "). Macris alleged in that action that Images breached the distributorship agreement by wrongfully suspending Macris's autoqualification status and terminating its distributorship, and that Macris was entitled to damages as a result of that breach. Macris sought to recover as breach of contract damages ("contract damages") the payments it would have received as Images's distributor but for Images's wrongful termination of its distributorship. The matter was set for trial on September 28, 1992.

¶ 5 Approximately one month prior to trial, in August 1992, Neways, Inc. was incorporated, with Thomas Mower as its president. It appears from the record that Thomas Mower was the president of Images up to the date on which Neways was created, whereupon he became the president of Neways.[3] Like Images, Neways is a multilevel marketing company engaged in the multilevel sale of various health and beauty products. On September 1, 1992, Images ceased doing business as a multilevel marketing company and transferred most of its assets to Neways. The newly formed Neways then took over the multilevel marketing operations of Images.

¶ 6 The trial scheduled for September 28, 1992, in *Macris I*, was continued by the trial court and finally went to trial without a jury on February 16, 1995, over three years after Images transferred its assets to Neways.[4] The trial court held that Images had materially breached its contract with Macris by wrongfully suspending Macris's autoqualification status and terminating its distributorship for lack of activity, and that Macris was entitled to damages for that breach. Images stipulated that it owed Macris $360,681.20 in contract damages for subsequent months, from March 1991 through August 31, 1992, the date on which Images ceased doing business as a multilevel marketing company. The trial court awarded Macris all the contract damages contained in the stipulation.

¶ 7 Just two days prior to the above-mentioned trial in *Macris I*—February 14, 1995—Macris filed the present action against Neways and its president and vice president, Thomas and Leslie Mower ("*Macris II* "). It

---

2. The trial court described a "downline" as follows:

> Multilevel marketing is promoted as an opportunity to bring other people into a business by "sponsoring" them and sharing in the profits that those people bring in by sponsoring other people creating what is called a "downline." More people create a greater volume of sales upon which the earlier sponsors receive a percentage as compensation. There is an incentive to build an organization (downline) so that future income will be at a much greater amount because of the volume created by the organization.

3. In its findings of fact, the trial court in *Macris I* stated: "Thomas E. Mower founded [Images] and served as its president at least through August 31, 1992."

4. The original trial date of September 28, 1992, was continued by the trial court, as a result of a conflicting trial calendar, to January 25, 1993. On January 3, 1993, the parties stipulated to a continuance of the trial date because Judge Burningham was taking over the case from Judge Christensen. After an additional continuance of the trial date by the court because of its criminal calendar, trial was scheduled for February 16, 1995.

is this case, *Macris II,* that is presently before us on certiorari. In *Macris II,* Macris asserted three claims in its complaint. First, Macris asserted a claim for fraudulent transfer, under which Macris alleged that Images's transfer of its assets to Neways was fraudulent pursuant to the Utah Fraudulent Transfer Act, *see* Utah Code Ann. § 25-6-5 (1998), because it was made with actual intent to limit the damages available to Macris and to hinder Macris from collecting the obligation owed by Images. Second, Macris asserted a successor liability claim, under which Macris claimed that because Neways is the successor corporation of Images, Macris is entitled to have Neways held liable for all amounts due as contract damages from Images to Macris awarded in *Macris I.* Finally, Macris asserted an alter ego claim, under which Macris claimed that there is no corporate distinction between Images and Neways and that the corporations have used the corporate shield of Neways to avoid liability to Macris.

¶ 8 Through the above-named claims, Macris sought to recover the following damages against Neways: first, Macris sought payment by Neways of the contract damages awarded against Images in *Macris I;* second, Macris sought additional contract damages not awarded in *Macris I,* consisting of its share of the profits from its downlines accruing *after* September 1, 1992—the date on which Images transferred its assets to Neways; and third, Macris sought punitive damages for the alleged fraudulent transfer of Images's assets to Neways.

¶ 9 On October 19, 1995, Neways moved for summary judgment, arguing that Macris's claims for fraudulent transfer, successor liability, and alter ego were barred by res judicata. Specifically, Neways argued that because Macris knew of its claims against Neways years before the trial against Images began, Macris could and should have included its claims against Neways in that action. Neways also argued that the doctrine of res judicata precluded Macris from pursuing additional contract damages in *Ma-*

*cris II,* because the issue of contract damages arising out of Images's 1991 breach of the distributorship agreement had already been fully litigated and decided in *Macris I.*

¶ 10 In response, Macris argued that res judicata was inapplicable to its claims to the extent they sought to bind Neways to the judgment rendered against Images in *Macris I* and to the extent they sought additional contract damages. Macris argued that its claims against Neways arose after Macris filed its complaint in *Macris I* and that res judicata was therefore inapplicable.

¶ 11 On November 14, 1995, Macris filed its own motion for summary judgment, arguing that because Neways admitted that it was the privy of Images for res judicata purposes in its motion for summary judgment, Macris should be granted a summary judgment on its successor liability claim. In response, Neways argued that although it admitted it was the privy of Images for res judicata purposes, it did not admit that it was the successor to Images's liabilities to Macris and that genuine issues of material fact precluded summary judgment on this issue.

¶ 12 On September 19, 1997, the trial court issued its memorandum decision on both motions for summary judgment.[5] The court granted Neways summary judgment on its claim that res judicata barred Macris's fraudulent transfer, successor liability, and alter ego claims to the extent they sought "further damages from Neways as a result of the breached contract with Images." The trial court, however, refused to hold that res judicata precluded Macris's claims to the extent they sought to bind Neways to the judgment rendered against Images in *Macris I.* The court also granted Macris summary judgment on its claim that Neways was Images's successor and was therefore liable for the previous judgment against Images.

¶ 13 Neways appealed,[6] arguing to the court of appeals that while the trial court correctly held that res judicata precluded Macris from pursuing additional contract

---

5. The memorandum decision contained statements of fact and reached conclusions of law.

6. Neways appealed to this court, which poured the case over to the court of appeals pursuant to section 78-2-2(4). *See* Utah Code Ann. § 78-2-2(4) (1996); Utah R.App.P. 42(a).

damages in *Macris II*, it erred by failing to apply the doctrine of res judicata to bar Macris's claims to the extent they sought to make Neways liable for the previous judgment against Images. Neways argued that all of Macris's claims, including its successor liability claim, could and should have been included in the previous action against Images. Neways further argued that the trial court erred in granting Macris a summary judgment on its claim that Neways was Images's successor and was therefore responsible to pay the damages awarded Macris in the previous lawsuit against Images.

¶ 14 Macris cross-appealed, arguing that the trial court erred in its determination that res judicata precluded Macris from pursuing further contract damages in *Macris II*. Macris reasoned that because its claims against Neways arose after it filed its complaint against Images in *Macris I*, res judicata was inapplicable to its claims to the extent they sought to enforce the judgment entered in *Macris I* and to the extent they sought additional contract damages.

¶ 15 The court of appeals reversed both summary judgments. *See Macris & Assocs. v. Neways, Inc.*, 1999 UT App. 230, ¶¶ 14, 15, 986 P.2d 748. In reversing the trial court's grant of summary judgment in favor of Neways, the court of appeals held that res judicata did not bar Macris's claims for fraudulent transfer, successor liability, and alter ego. The court reasoned that because the facts giving rise to Macris's claims arose after Macris filed its amended complaint in *Macris I*, the doctrine of res judicata was inapplicable. In so holding, the court of appeals expressly adopted the rule, citing several courts in other jurisdictions, that a party need only include later claims in an action for res judicata purposes if the party was aware of the facts upon which the later claims were based *at the time the complaint was filed*. The court of appeals, however, did not address the issue of whether res judicata bars Macris from recovering additional contract damages in the present action. In addition, the court of appeals reversed the trial court's grant of summary judgment in favor of Macris, holding that material issues of fact precluded summary judgment on Macris's claim

that Neways was Images's successor in liability.

¶ 16 Neways filed a petition for a writ of certiorari with this court, seeking review of the decision of the court of appeals. We granted the petition. Neways argues that the court of appeals erred in its determination that the doctrine of res judicata does not bar Macris's claims for fraudulent transfer, successor liability, and alter ego. In this regard, Neways raises two arguments. First, Neways argues that the court of appeals erred by adopting the res judicata test that a party need include later claims in an action only if the party was aware of the facts upon which the later claims were based at the time the complaint was filed. Second, Neways argues that the court of appeals erred on review of the trial court's decision by failing to address whether the doctrine of res judicata precludes Macris from pursuing additional contract damages—beyond those awarded in *Macris I*—in the present action.

## STANDARD OF REVIEW

¶ 17 When exercising our certiorari jurisdiction, "we review the decision of the court of appeals, not of the trial court." *Carrier v. Pro–Tech Restoration*, 944 P.2d 346, 350 (Utah 1997) (citing *Butterfield v. Okubo*, 831 P.2d 97, 101 n. 2 (Utah 1992)). The court of appeals' determination of whether res judicata bars an action presents a question of law. "When reviewing questions of law, we accord no particular deference to the conclusions of law made by the court of appeals but review them for correctness." *State v. Christensen*, 866 P.2d 533, 535 (Utah 1993) (citing *Allen v. Utah Dep't of Health*, 850 P.2d 1267, 1269 (Utah 1993); *Landes v. Capital City Bank*, 795 P.2d 1127, 1129 (Utah 1990)).

## ANALYSIS

### I. MACRIS'S FRAUDULENT TRANSFER, SUCCESSOR LIABILITY, AND ALTER EGO CLAIMS

¶ 18 We first address Neways's argument that the court of appeals erred in its determination that Macris's claims for fraudulent

transfer, successor liability, and alter ego are not barred by res judicata.

¶ 19 The doctrine of res judicata embraces two distinct branches: claim preclusion and issue preclusion. *See Swainston v. Intermountain Health Care,* 766 P.2d 1059, 1061 (Utah 1988). Claim preclusion involves the same parties or their privies and also the same cause of action, " 'and this precludes the relitigation of all issues that could have been litigated as well as those that were, in fact, litigated in the prior action.' " *Schaer v. State,* 657 P.2d 1337, 1340 (Utah 1983) (quoting *Searle Bros. v. Searle,* 588 P.2d 689, 690 (Utah 1978)). Issue preclusion, on the other hand, " '*arises from a different cause of action* and prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit.' " *Id.* Therefore, while both branches of res judicata "serve[ ] the important policy of preventing previously litigated issues from being relitigated," different rules govern each branch. *Salt Lake City v. Silver Fork Pipeline Corp.,* 913 P.2d 731, 733 (Utah 1995) (citing *Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873, 874–75 (Utah 1983)). Neways relies upon claim preclusion in arguing that Macris's *claims* in *Macris II* are barred by res judicata because they could and should have been included in the action against Images in *Macris I.*

¶ 20 In order for claim preclusion to bar a subsequent cause of action, a plaintiff must satisfy three requirements:

> First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*Madsen v. Borthick,* 769 P.2d 245, 247 (Utah 1988) (citing *Penrod,* 669 P.2d at 875; *Bradshaw v. Kershaw,* 627 P.2d 528, 531 (Utah 1981); *Int'l Res. v. Dunfield,* 599 P.2d 515, 516–17 (Utah 1979); *Krofcheck v. Downey State Bank,* 580 P.2d 243, 244 (Utah 1978); *Belliston v. Texaco, Inc.,* 521 P.2d 379, 380 (Utah 1974); *Nat'l Fin. Co. v. Daley,* 14 Utah 2d 263, 265–66, 382 P.2d 405, 407

(1963); *Wheadon v. Pearson,* 14 Utah 2d 45, 47, 376 P.2d 946, 947–48 (1962)). All three elements must be present for claim preclusion to apply. *See Madsen,* 769 P.2d at 247.

¶ 21 In reference to the second element of the test outlined above, Neways argued before the court of appeals that Macris's claims for fraudulent transfer, successor liability, and alter ego "should have been raised" in *Macris I* because Macris knew of its claims against Neways *before the trial* in *Macris I* began and should therefore have amended its complaint in that action and asserted the claims now pursued in the present action.

¶ 22 The court of appeals rejected Neways's argument and held that the doctrine of claim preclusion did not require Macris to litigate its claims against Neways in *Macris I* because "the facts giving rise to Macris's claims against Neways . . . arose after Macris filed its amended complaint against Images." *Macris & Assocs. v. Neways, Inc.,* 1999 UT App. 230, ¶ 14, 986 P.2d 748. In so holding, the court of appeals adopted the rule that a party is required to include claims in an action for res judicata purposes only if "those claims . . . arose before the filing of the complaint in the first action." *Id.* at ¶ 9.

¶ 23 Neways now argues before this court that the court of appeals erred in adopting the above-mentioned test, and contends that this court should adopt an alternate res judicata test requiring joinder of all claims arising before entry of judgment where the plaintiff has sufficient notice and opportunity to join such claims. Neways contends that the res judicata test adopted by the court of appeals is inconsistent with this court's decision in *Badger v. Badger,* 69 Utah 293, 254 P. 784 (1927), and the Utah Rules of Civil Procedure.

¶ 24 Neways's reliance on *Badger* is misplaced. In *Badger,* the defendant twice petitioned the trial court for modification of a divorce decree. *See Badger,* 69 Utah at 296–97, 254 P. at 785–86. The defendant's first petition sought modification on the ground that the property settlement on which the decree was based was induced by the plaintiff's misrepresentations and omissions con-

cerning his assets. *See* 69 Utah at 296–97, 254 P. at 785. The trial court modified the decree and ordered the plaintiff to pay the defendant an additional amount. *See* 69 Utah at 296, 254 P. at 785–86. Two weeks later, the defendant filed a second petition, alleging other misrepresentations that the plaintiff had originally made. *See* 69 Utah at 296–97, 254 P. at 786. The plaintiff moved to strike the second petition on res judicata grounds, claiming that the court's decision concerning the first petition barred relief on the second. *See* 69 Utah at 298–99, 254 P. at 786. The trial court granted the motion. *See* 69 Utah at 299, 254 P. at 786. On appeal, this court affirmed the trial court's dismissal of the defendant's second petition on res judicata grounds. In so holding, this court stated:

> It affirmatively is made to appear that *at the time the first petition was filed* for a modification of the decree of divorce the defendant knew the contents of said decree and that she was to receive no property except that actually awarded to her.... [T]he appellant had as much knowledge about the plaintiff's property and income *at the time she filed her first petition* as she had at the time she filed the [second] petition which was stricken.

69 Utah at 301, 254 P. at 787 (emphasis added). Accordingly, *Badger* is consistent with the rule that a plaintiff need only include claims in a suit for res judicata purposes if the plaintiff was aware of the facts upon which the later claims were based at the time the first suit was filed.

¶ 25 Equally misplaced is Neways's argument that the court of appeals' decision creates confusion between the Utah Rules of Civil Procedure and the doctrine of res judicata. According to Neways, the Utah Rules of Civil Procedure "clearly establish an intent that pleadings ... should be amended as additional facts and claims are discovered" and a rule requiring amendment for res judicata purposes should therefore be adopted. While the Utah Rules of Civil Procedure do allow for the amendment of pleadings to add additional parties or claims for relief, they do not require it. *See* Utah R.Civ.P. 15(a) ("A party *may* amend his pleading ...." (empha-

sis added)); Utah R.Civ.P. 20(a) ("All persons *may* be joined in one action as defendants ...." (emphasis added)). Therefore, it is clear that the rule espoused by Neways, requiring that pleadings be amended for res judicata purposes as additional facts and claims are discovered, would be inconsistent with the Utah Rules of Civil Procedure. Accordingly, we affirm the court of appeals' adoption of the rule that a party is required to include claims in an action for res judicata purposes only if those claims arose before the filing of the complaint in the first action.

¶ 26 A number of states and federal courts in other jurisdictions addressing this issue have come to a similar conclusion, holding that parties are required to include claims in an action for res judicata purposes only if those claims arose before the filing of the complaint in the earlier action. *See Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369–70 (2d Cir. 1997); *Doe v. Allied Signal, Inc.*, 985 F.2d 908, 915 (7th Cir.1993); *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir.1992); *Dillard v. Security Pacific Brokers, Inc.*, 835 F.2d 607, 609 (5th Cir.1988); *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 739 (9th Cir.1984); *Andrews v. Wade & De Young, Inc.*, 950 P.2d 574, 576 (Alaska 1997); *Bolte v. Aits, Inc.*, 60 Haw. 58, 587 P.2d 810, 813–14 (1978); *Durrant v. Quality First Mktg., Inc.*, 127 Idaho 558, 903 P.2d 147, 149–50 (Ct.App.1995); *Ben C. Jones & Co. v. Gammel Statesman Publ'g Co.*, 100 Tex. 320, 99 S.W. 701, 703 (1907).

▮▮▮▮ ¶ 27 Applying the test to the facts of this case, the court of appeals was correct in concluding that res judicata does not bar Macris's claims against Neways for fraudulent transfer, successor liability, and alter ego. The facts giving rise to Macris's claims—Images's transfer of its assets to Neways and Neways's subsequent takeover of Images's business—did not arise until after the filing of the complaint in *Macris I*. Thus, Macris was not obligated to amend its complaint in *Macris I* to include the claims now pursued in the present action against Neways.

¶ 28 Moreover, for the doctrine of res judicata to preclude a subsequent cause of action, not only must the plaintiff have been aware of the cause of action at the time the first suit was commenced, but the cause of action in the present suit must be identical to the one brought in the prior suit. *See Schaer*, 657 P.2d at 1340 (" *'In order for res judicata to apply, both suits must involve* the same parties or their privies and also *the same cause of action . . . .* ' "(quoting *Searle Bros. v. Searle*, 588 P.2d 689, 690 (Utah 1978))). In determining whether claims are identical for res judicata purposes, this court has focused on whether "[t]he two causes of action rest on a different state of facts and evidence of a different kind or character is necessary to sustain the two causes of action." *Schaer*, 657 P.2d at 1340; *see also* 46 Am.Jur.2d *Judgments* § 534 (1994) (describing identity of facts or evidence test). Therefore, even if a plaintiff is aware of the factual basis of a suit at the filing of another suit, he or she is not obligated to bring all claims together if there is no identity of facts and evidence between the two claims.

¶ 29 *Macris I* arose out of the formation of a distributorship agreement between Macris and Images in August 1989 and Images's 1991 breach of that agreement. In *Macris I,* Macris and Images litigated whether an enforceable agreement existed between the parties, whether Images breached that Agreement, and the amount of damages that should be awarded for that breach.

¶ 30 In contrast, *Macris II* arose out of the formation of Neways in August 1992, the transfer by Images of its assets to Neways on September 1, 1992, three days before the original trial date in *Macris I,* and Neways's subsequent takeover of Images's multilevel marketing business. Macris based its claims in *Macris II* on the Utah Fraudulent Transfer Act and similar common law doctrines designed to protect creditors from the evasions of debtors. Specifically, Macris claimed that Images's transfer of its assets to Neways three days before the trial in *Macris I* was scheduled to begin was fraudulent and accomplished to limit the amount of damages available to Macris and to hinder Macris

from collecting the obligation owed by Images.

¶ 31 Accordingly, it is clear that Macris's claims against Neways in *Macris II* rest upon a different set of facts, and evidence of a different kind or character is necessary to sustain the claims, than the breach of contract litigation that was the subject of *Macris I.* Therefore, even if Macris had known of the relevant facts of *Macris II* at the filing of *Macris I*—and it did not—it still would have been justified in not including its fraudulent transfer, successor liability, and alter ego claims in the first lawsuit.

## II. ADDITIONAL CONTRACT DAMAGES

¶ 32 We next address Neways's argument that the court of appeals erred by failing to address the issue raised on appeal of whether "res judicata" prevents Macris from pursuing additional contract damages in the present action—*Macris II.*

¶ 33 In the proceeding below, the court of appeals determined that the claim preclusion branch of the doctrine of res judicata did not bar Macris's claims for fraudulent transfer, successor liability, and alter ego. The court of appeals, however, did not address the issue of whether res judicata prevents Macris from pursuing additional contract damages not recovered in *Macris I* through the above-named claims. Resolution of the first issue does not resolve the second.

¶ 34 As noted above, there are two branches of res judicata, claim preclusion and issue preclusion—also known as collateral estoppel. *See Swainston v. Intermountain Health Care,* 766 P.2d 1059, 1061 (Utah 1988). The basic difference between the two branches of res judicata is simply put: while "claim preclusion applies to *whole claims,* whether litigated or not," and prevents parties from relitigating the same claim in a second suit, 18 James Wm. Moore, *Moore's Federal Practice* § 131.13[1] (Matthew Bender, 3d ed.2000) (emphasis added), issue preclusion, or collateral estoppel, arises from a different cause of action and prevents parties or their privies from relitigating "particular *issues* that have been contested and resolved." *Id.; see also Schaer v. State,* 657

P.2d 1337, 1340 (Utah 1983); *Searle Bros. v.. Searle*, 588 P.2d 689, 690 (Utah 1978). "Thus, it is important to recognize that although the doctrines of [claim preclusion] and [issue preclusion] are closely related, they are usually mutually exclusive." *Schaer*, 657 P.2d at 1340.

¶ 35 Accordingly, the court of appeals' determination that Macris's *claims* are not barred by claim preclusion does not preclude a determination that Macris is prevented by the doctrine of issue preclusion or collateral estoppel from seeking additional contract damages arising out of *Macris I* through its claims for fraudulent transfer, successor liability, and alter ego. We agree with Neways, therefore, that the court of appeals did err in failing to decide whether res judicata prevents Macris from seeking additional contract damages in *Macris II.*

¶ 36 Because the court of appeals did not address this issue, we could remand the matter to the court of appeals for consideration. However, the issue has been argued and briefed by both parties on certiorari, and therefore, we are able to dispose of this issue ourselves, and we elect to do so. *See State v. Brooks*, 908 P.2d 856, 861 (Utah 1995). We thus turn our attention to the merits of Neways's argument that Macris is precluded by res judicata, more specifically the issue preclusion branch of res judicata,[7] from pursuing additional contract damages in this case.

¶ 37 We apply a four-part test to determine whether the doctrine of issue preclusion is applicable:

7. Despite Neways's imprecise use of the term "res judicata," its argument concerning additional contract damages, as explained above, is properly analyzed under the issue preclusion branch of the doctrine of res judicata. In any event, the claim preclusion branch of the doctrine of res judicata is inapplicable to Neways's argument. This court has previously stated that "[i]n order for [claim preclusion] to apply, both suits must involve ... the *same cause of action." Searle Bros.*, 588 P.2d at 690 (emphasis added). In contrast, issue preclusion *"arises from a different cause of action* and prevents parties ... from relitigating ... issues in the second suit that were fully litigated in the first suit." *Id.* (emphasis added) (citing *Ray v. Consol. Freightways*, 4 Utah 2d 137, 141, 289 P.2d 196, 199 (1955)); *see*

First, the issue challenged must be identical in the previous action and in the case at hand. Second, the issue must have been decided in a final judgment on the merits in the previous action. Third, the issue must have been competently, fully, and fairly litigated in the previous action. Fourth, the party against whom collateral estoppel is invoked in the current action must have been either a party or privy to a party in the previous action.

*Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d 1366, 1370 (Utah 1996); *see also Swainston*, 766 P.2d at 1061. All four elements must be present for issue preclusion to apply. *See Jones, Waldo, Holbrook & McDonough*, 923 P.2d at 1370. Macris does not argue that there is no "identity of issues" for collateral estoppel purposes. Therefore, our analysis focuses on the second, third, and fourth elements. We address each element in turn.

### A. Actually Litigated and Decided

¶ 38 The second element outlined above requires that the issue sought to be litigated in the present action must have been *decided* in a *final judgment on the merits* in the previous action. *See id.* Macris does not argue that the judgment entered in *Macris I* was not a final judgment on the merits. Therefore, our analysis, with respect to the second element outlined above, focuses on whether the issue raised in the present case was "actually asserted and tried" in the prior proceeding. *Int'l Res. v. Dunfield*, 599 P.2d 515, 517 (Utah 1979).

*also Schaer*, 657 P.2d at 1340 ("Where the claim ... is the same in both cases, [claim preclusion] applies. But where the claim ... is different in the two cases, then [issue preclusion] is applicable."). We have already determined that Macris's claims for fraudulent transfer, successor liability, and alter ego are different than its breach of contract claim raised in *Macris I, see* discussion *supra* part I, in that the two causes of action rest on a different state of facts and evidence of a different kind or character is necessary to sustain the two causes of action. Thus, claim preclusion is inapplicable to Neways's argument that Macris is barred from seeking additional contract damages through the above-named claims.

¶ 39 In *Macris I*, the trial court determined that a valid distributorship agreement existed between Macris and Images, that Images breached the Agreement, *and that Macris was entitled to damages as a result of that breach.* Accordingly, the trial court awarded Macris damages in the amounts Images stipulated that it should have paid Macris for subsequent months, from March 1991 through August 31, 1992, the date on which Images ceased doing business as a multilevel marketing company. In *Macris II*, Macris sought to litigate whether it was entitled to additional contract damages not recovered in *Macris I* arising after the date Images transferred its assets to Neways.

 ¶ 40 Macris argues that because the trial court limited its award of damages to August 31, 1992, the issue of Macris's entitlement to damages accruing after August 31, 1992, was never actually litigated or decided in *Macris I*. Clearly, if an issue is actually raised by proper pleadings and treated as an issue in a case, it is conclusively determined by the first judgment. *See Int'l Res.*, 599 P.2d at 517. However, the preclusive effects of the doctrine of collateral estoppel go further.

> The general rule precluding the relitigation of material facts or questions which were in issue and adjudicated in a former action is applicable to all matters essentially connected with the subject matter of the litigation. This application of the general rule extends to questions necessarily involved in an issue ... although no specific finding may have been made in reference to that matter, and although such matters were not directly referred to in the pleadings.

46 Am.Jur.2d *Judgments* § 545. It follows, therefore, that a party cannot by negligence or design withhold issues and litigate them in separate actions. If the second action involves an issue as to which the judgment in a prior action is a conclusive adjudication, the estoppel, so far as that issue is concerned, extends to every matter which was or might have been urged to sustain or defeat the determination actually made. *See id.*

¶ 41 The issue of damages resulting from Images's 1991 breach of contract was decided in *Macris I*. Moreover, the effect of the trial court's award of damages in *Macris I* embodied all damages: past, present, and prospective. The Restatement supports this view, reasoning:

> Typically, even when the injury caused by an actionable wrong extends into the future and will be felt beyond the date of judgment, the damages awarded by the judgment are nevertheless supposed to embody the money equivalent of the entire injury. Accordingly, if a plaintiff who has recovered a judgment against a defendant in a certain amount becomes dissatisfied with his recovery and commences a second action to obtain increased damages, the court will hold him precluded; his claim has been merged in the judgment and may not be split. *It is immaterial that in trying the first action he was not in possession of enough information about the damages, past or prospective, or that the damages turned out in fact to be unexpectedly large and in excess of the judgment.*

Restatement (Second) of Judgments § 25 cmt. c (1982) (emphasis added). Moreover, the trial court made no finding that its award of damages in *Macris I* was not final. Therefore, because the trial court's award of damages in *Macris I* was a conclusive adjudication on the issue of damages resulting from Images's 1991 breach of the autoqualification agreement, the issue of damages accruing after August 1992 was connected to the subject matter and necessarily decided in *Macris I*.

¶ 42 Macris further argues that because the issue of contract damages was decided by stipulation, it was not actually litigated and decided for collateral estoppel purposes.

 ¶ 43 An issue determined by stipulation rather than judicial resolution is binding in a subsequent action if the parties manifested an intention to that effect. *See, e.g.,* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4443, at 382 (1981) ("Issue preclusion does not attach unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation."); 18 James Wm. Moore, *Moore's Federal Practice*

§ 132.03[2][h][ii] (Matthew Bender, 3d ed. 2000) ("[S]tipulation may be binding in a subsequent action . . . if the parties . . . manifested an intention to that effect."). In this case, Macris does not argue that the stipulation concerning contract damages was not binding in general; rather, Macris argues that the stipulation was not binding as to damages accruing *after* August 31, 1992, the date on which Images transferred its assets to Neways. However, if the stipulation is meant to be final as to some damages but not final as to other damages, it must say so. Our review of the record in this case, however, evidences no such intention. Moreover, the trial court made no finding that its damages award—which was based on the parties stipulation—was not final as to all damages. Therefore, we find that the stipulation in this case has res judicata effect.

### B. Full and Fair Opportunity to Litigate

¶ 44 In reference to the third element outlined above, we must determine whether "the issue in the first case [was] competently, fully, and fairly litigated." *See Swainston*, 766 P.2d at 1061 (citations omitted). Macris argues that the issue of contract damages accruing after August 31, 1992, was not "competently, fully and fairly litigated" because Neways's fraudulent takeover of Images's business prevented Macris from litigating such damages. However, the record clearly establishes that Macris was aware of Images's transfer of its assets to Neways almost a year before Macris filed its last pleading in *Macris I* and two and one-half years before the trial. During this two- and one-half-year period, Macris enjoyed ample opportunity to conduct unimpeded discovery and to fully develop its claim for damages by examining Neways's financial records. Had Macris conducted discovery concerning future damages, it surely could have included that evidence in the figures presented to the trial court. Thus, it seems fair to state that Macris had a full and fair opportunity to litigate the issue of damages accruing after August 31, 1992, in the prior adjudication.

### C. Privity

¶ 45 Finally, the fourth element of the test outlined above also permits the application of collateral estoppel in this case. Unlike the doctrine of claim preclusion, issue preclusion does not require that "*both cases* . . . involve the *same parties* or their privies." *Madsen*, 769 P.2d 245, 247 (Utah 1988) (emphasis added). Rather, issue preclusion applies even if only "the party *against* whom the [doctrine] is asserted [was] a party or in privity with a party to the prior adjudication." *Swainston*, 766 P.2d at 1061; *see also Wilde v. Mid–Century Ins. Co.*, 635 P.2d 417, 419 (Utah 1981) ("[m]utuality of parties is no longer essential" for collateral estoppel purposes). In this case, although Neways was a nonparty to *Macris I*, the party *against* whom the doctrine of collateral estoppel is asserted is Macris. It is clear that Macris & Associates, the plaintiff herein, is the same party as Macris & Associates, the plaintiff in *Macris I*. Therefore, the party *against* whom the doctrine is asserted—Macris—was a party to the prior adjudication.

¶ 46 On the basis of the foregoing, it is clear that all of the requirements of collateral estoppel have been satisfied. Consequently, Macris is precluded from relitigating the issue of damages arising from Images's breach of the distributorship agreement in this case.

### CONCLUSION

¶ 47 We conclude that the court of appeals correctly determined that Macris's claims for fraudulent transfer, successor liability, and alter ego are not barred by the doctrine of res judicata. In so holding, we affirm the court of appeals' adoption of the res judicata test that a plaintiff need only include later claims in an action for res judicata purposes if the plaintiff was aware of the facts upon which the later claims are based at the time the complaint was filed. We further conclude, however, that Macris is precluded by the issue preclusion branch of the doctrine of res judicata from seeking additional contract damages through the above-named claims.

¶ 48 Chief Justice HOWE, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Associate Chief Justice RUSSON'S opinion.