2022 UT App 22

# THE UTAH COURT OF APPEALS

NICHOLAS KUHAR AND JULIE KUHAR,
Appellants,
*v.*
THOMPSON MANUFACTURING INC. AND XYZ CORPORATIONS,
Appellees.

Opinion
No. 20200584-CA
Filed February 17, 2022

Third District Court, West Jordan Department
The Honorable Kristine Johnson
No. 190900751

Matthew Weng, Colin P. King, and Paul M.
Simmons, Attorneys for Appellants

Robert L. Janicki and Michael L. Ford, Attorneys
for Appellees

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES RYAN M. HARRIS and RYAN D. TENNEY
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Nicholas and Julie Kuhar appeal the district court's grant of summary judgment in favor of Thompson Manufacturing Inc. (Thompson) on grounds of issue preclusion. We reverse and remand for further proceedings.

## BACKGROUND

¶2     Nicholas Kuhar suffered serious injury when he fell thirty-seven feet onto crushed concrete after his safety harness system failed while he was cleaning rain gutters in New Jersey.

*Kuhar v. Petzl Co.* (*Kuhar I*), No. 16-0395, 2018 WL 7571319, at *1 (D.N.J. Nov. 27, 2018). The harness consisted of "three component parts: a 'micrograb,' a bolt, and a rope." *Id.* The Kuhars sued several companies involved in the design, manufacture, production, and distribution of the harness. These included Thompson, which designed and manufactured the micrograb, as well as the company that sold the micrograb and the companies that manufactured and sold a bolt included in the micrograb. *Id.* The Kuhars brought their lawsuit in federal court in New Jersey, where the accident took place.

¶3 Thompson's principal place of business is in Utah. Thompson moved to dismiss the Kuhars' complaint, at least as stated against Thompson, on the ground that New Jersey lacked personal jurisdiction over Thompson. The New Jersey federal court granted the motion and dismissed Thompson from the case.

¶4 Subsequently, the Kuhars filed the present action against Thompson in Utah. In the meantime, the case in New Jersey proceeded against the other defendants.

¶5 The Kuhars submitted an expert report in the New Jersey case. The expert opined that the bolt failed as a result of two design defects and a manufacturing defect and that an improper rope was used with the micrograb kit. *Id.* at *2. Two of the other defendants moved to strike the report. *Id.* They alleged that the expert's report was not sufficiently reliable to be admissible under rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Kuhar I*, 2018 WL 7571319, at *2. The New Jersey court agreed and granted the motion to strike. *Id.* at *10.

¶6 The remaining New Jersey defendants then filed motions for summary judgment on the ground that, without expert testimony, the Kuhars could not establish their claims of design

defect or failure to warn. *Kuhar v. Petzl Co.* (*Kuhar II*), No. 16-0395, 2019 WL 6211544, at *2 (D.N.J. Oct. 21, 2019). The court agreed and granted the motions, concluding that the Kuhars could not establish that the harness's failure resulted from a design defect or failure to warn without the assistance of expert testimony. *Id.* at *5.

¶7    By the time of the New Jersey court's ruling, the case in Utah was in the middle of the discovery phase, with an expert discovery due date almost a year away. Nevertheless, Thompson moved for summary judgment in the Utah case on the ground that the New Jersey ruling collaterally estopped the Kuhars from establishing their claims against Thompson. The district court agreed and granted Thompson's motion for summary judgment. The Kuhars now appeal.

ISSUE AND STANDARD OF REVIEW

¶8    The Kuhars challenge the district court's grant of summary judgment in favor of Thompson, asserting that their Utah claims against Thompson were not barred by the New Jersey court's summary judgment ruling in favor of the other defendants because the issues in the Utah and New Jersey cases were not identical. Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). We review a district court's ruling on summary judgment for correctness. *Rupp v. Moffo*, 2015 UT 71, ¶ 5, 358 P.3d 1060. Specifically, the "determination of whether res judicata bars an action presents a question of law," which we review for correctness. *Macris & Assocs., Inc. v. Neways Inc.*, 2000 UT 93, ¶ 17, 16 P.3d 1214; *see also Massey v. Board of Trs. of Ogden Area Cmty. Action Comm., Inc.*, 2004 UT App 27, ¶ 5, 86 P.3d 120.

ANALYSIS

¶9 "Issue preclusion, often referred to as collateral estoppel, prevents relitigation of issues already determined in a previous action." *Collins v. Sandy City Board of Adjustment*, 2000 UT App 371, ¶ 8, 16 P.3d 1251. To establish issue preclusion, a party must show

> (1) the issue decided in the prior adjudication is identical to the one presented in the instant action; (2) the party against whom issue preclusion is asserted was a party, or in privity with a party, to the prior adjudication; (3) the issue in the first action was completely, fully, and fairly litigated; and (4) the first suit resulted in a final judgment on the merits.

*Buckner v. Kennard*, 2004 UT 78, ¶ 13, 99 P.3d 842.[1] As our supreme court has noted, this doctrine "prevents parties or their privies from relitigating issues which were once *adjudicated on the merits* and have resulted in a final judgment." *Murdock v. Springville Mun. Corp.* (*In re General Determination of the Rights to the Use of All the Water*), 1999 UT 39, ¶ 18, 982 P.2d 65 (emphasis added). Thompson's collateral estoppel arguments run into trouble on both the first and the third elements.

¶10 With regard to the first element, the issues actually decided in the New Jersey litigation were not the same as the

---

1. Although the collateral estoppel question concerns the preclusive effect of a New Jersey ruling, no party asserts that we should apply New Jersey law to answer the collateral estoppel question. And in any event, no suggestion has been made that New Jersey law and Utah law differ in application of collateral estoppel principles.

issues raised before the district court here. In New Jersey, the court determined both (1) that a particular expert's testimony, proffered by the Kuhars, was inadmissible under rule 702 of the Federal Rules of Evidence and applicable federal case law, *see Kuhar I*, No. 16-0395, 2018 WL 7571319, at *9–10 (D.N.J. Nov. 27, 2018), and (2) that without that expert's testimony, under New Jersey law the Kuhars could not satisfy their burden of establishing their product liability claims, *see Kuhar II*, No. 16-0395, 2019 WL 6211544, at *5, *8–9 (D.N.J. Oct. 21, 2019). Those are *not* the same issues that the parties raised in the district court in the present case.

¶11    The Utah case was in its early stages when Thompson filed its summary judgment motion, and expert disclosure deadlines had not yet passed. The Kuhars had not yet submitted any expert report in support of their claims—certainly not the *same* expert report that was excluded in New Jersey—and the district court was not asked to weigh in on whether the specific testimony of any particular expert was admissible.[2] Thus,

---

2. Moreover, even if the Kuhars had sought to admit, in Utah, the same testimony by the same expert based on the same report they submitted in New Jersey, the question would have been governed by Utah law and not by federal law. *See* Utah R. Evid. 702. Our standards for admission of expert testimony are not the same as—and are arguably somewhat more lenient than—the standards for admission of expert testimony under federal law. *See State v. Sheehan*, 2012 UT App 62, ¶ 22, 273 P.3d 417 (noting that "Utah's rule 702 differs from its current federal counterpart by requiring 'only a "threshold" showing'" (quoting Utah R. Evid. 702 advisory committee note)). Thus, the question of whether a particular expert's testimony is admissible under federal law is not necessarily the same as whether that same testimony is admissible under Utah law. In light of our arguably

(continued…)

because the Kuhars had not been adjudicated to be bereft of expert testimony, the court had no occasion to consider whether the Kuhars, in the absence of expert testimony, would be able to satisfy their burden of proof on the merits of their underlying claim.

¶12    By contrast, the issue that was the subject of Thompson's summary judgment motion—the issue to which Thompson wished to ascribe preclusive effect—was whether the product in question was defective. Indeed, even in its briefing on appeal, Thompson continues to frame the relevant issue as whether the product in question was defective. But the New Jersey court never grappled with the merits of that issue; it decided the case against the Kuhars not because it made a factual determination that the product was not defective but because it determined that the Kuhars could not satisfy their burden of proof on that point without expert testimony. Because the New Jersey court never concerned itself with the merits of whether the product was defective, that issue is not one to which Thompson here can ascribe preclusive effect.

¶13    And it is at this point in the analysis that the third element of the collateral estoppel test comes into play. That third element requires Thompson to demonstrate that "the issue in the first action was completely, fully, and fairly litigated." *See Buckner*, 2004 UT 78, ¶ 13; *see also Murdock*, 1999 UT 39, ¶ 18 (stating that the elements of collateral estoppel require that the issue in

---

(…continued)

more lenient standards, it is at least conceivable that a given expert's testimony could be admissible under Utah law even if it is not admissible under federal law. In any event, we need not consider these issues further here, because the Kuhars have not sought to admit the same testimony by the same expert whose report was excluded in New Jersey.

question have been "adjudicated on the merits"). If we define the "issue" as Thompson asks us to—namely, whether the product in question was defective—it becomes clear that this issue was never the subject of full and complete litigation in New Jersey. The court simply never reached the merits of that issue—i.e., holding a trial to weigh the evidence and make a finding as to the alleged defective nature of the product—because it determined that the Kuhars' overarching claim failed on what amounted to a procedural ground.

¶14 A court that dismisses a party's claim on nonmerits procedural grounds (say, for instance, because a party's answer has been stricken as a sanction for discovery abuses or because a party fails to appear at a hearing) has not fully litigated the merits of the underlying substantive *issue*, even though its dismissal of the overarching *claim* may operate as an "on the merits" dismissal.[3] *See, e.g., Schuh v. American Express Bank, FSB*,

---

3. Had Thompson asked for application of *claim* preclusion (instead of *issue* preclusion), it would have a fair point that the Kuhars had raised a defective product claim and had lost on the merits—whether on a procedural or substantive ground—and that they are attempting to raise the same defective product claim here. *See Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 19, 16 P.3d 1214 (stating that claim preclusion "precludes the relitigation of all issues that could have been litigated as well as those that were, in fact, litigated in the prior action" (quotation simplified)). But there is no such thing as nonmutual *claim* preclusion; we presume that the reason Thompson does not ask for application of claim preclusion here is that the parties to the New Jersey decision are not the same as the parties to this case, due to Thompson's dismissal from the New Jersey case on personal jurisdiction grounds. *See id.* ("Claim preclusion involves the same parties or their privies . . . ."). Had Thompson

(continued…)

806 F. App'x 973, 974 (11th Cir. 2020) (stating that the order of dismissal in the first case "cannot serve as collateral estoppel" in the second case "because [the first] case was not actually fully litigated and decided" but "was dismissed as a sanction"); *cf. Zufelt v. Haste, Inc.*, 2006 UT App 326, ¶ 15, 142 P.3d 594 (holding that the issue to which the court was being asked to ascribe preclusive effect "was not the central issue in the" previous proceeding and "was only superficially addressed in discussions pertaining to" another determination the court made, and that therefore the court could not "say that [the party] had an opportunity to completely and fully litigate the issue"); Restatement (Second) of Judgments § 27 cmt. d (Am. L. Inst. 1982) (stating that an "issue is actually litigated" when it "is properly raised . . . and is submitted for determination, and is determined"). Reaching the merits of an *issue* is not always the same thing as reaching the merits of a *claim*. A court can decide the merits of an underlying issue without making a determination as to the merits of the overarching claim (for instance, when a court dismisses a case for lack of personal jurisdiction, it has decided the issues related to the jurisdictional question, but its dismissal is not on the merits and it may not have reached the substance of the underlying claim), and a court can dismiss a claim on its merits without reaching the merits of one or more of the underlying issues that formed the basis for the complaint (for instance, when a court dismisses a claim as a sanction, the dismissal may operate as an "on the merits" dismissal, but the court may never have reached the merits of any of the substantive issues). To keep the doctrines of claim preclusion and issue preclusion separate, it is important to keep

---

(…continued)
remained involved in the New Jersey case and not sought dismissal on jurisdictional grounds, it would have a good argument for application of claim preclusion here.

these distinctions in mind. *See* 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.13[1] (2021) ("The basic difference between claim preclusion and issue preclusion is simply put: claim preclusion applies to whole claims, whether litigated or not, whereas issue preclusion applies to particular issues that have been contested and resolved.").

¶15    Here, while the New Jersey decisions certainly disposed of, on its merits, the Kuhars' product liability *claim* against the defendants named in that action, they never reached the merits of the underlying *issue* to which Thompson points: whether the product was defective. And as long as Thompson persists in defining the "issue"—for purposes of issue preclusion—as whether the product was defective, Thompson can never win a motion for summary judgment on issue preclusion grounds.

## CONCLUSION

¶16    Because the issue to which Thompson wishes to ascribe preclusive effect was not identical to the issues actually decided by the New Jersey court and was never fully and fairly litigated there, the district court erred in determining that issue preclusion barred the Kuhars' claims. We therefore reverse the district court's grant of summary judgment and remand for further proceedings.

———————