*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 12**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

NICHOLAS KUHAR and JULIE KUHAR,
*Respondents*,

*v.*

THOMPSON MANUFACTURING, INC.,
*Petitioner*.

No. 20220282
Heard January 9, 2023
Filed April 25, 2024

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Kristine E. Johnson
No. 190900751

Attorneys:

Colin P. King, Paul M. Simmons, Salt Lake City, Matthew Weng,
Bridgeton, N.J., for respondents

Robert L. Janicki, Michael L. Ford, Sandy, for petitioner

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE HAGEN, and JUSTICE POHLMAN joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 This case involves the doctrine of issue preclusion. Under this doctrine, a party can preclude another party from litigating an issue if the same issue was litigated and determined in a previous case; the previous case resulted in a final judgment on the merits; and the party to be precluded was a party, or in privity with a party, in the previous case. *Buckner v. Kennard*, 2004 UT 78, ¶ 13, 99 P.3d 842.

¶2    In the instant case, Nicholas Kuhar and his wife Julie have asserted a product liability claim against a Utah company, Thompson Manufacturing. They seek compensation for injuries Kuhar sustained in New Jersey, when his safety harness failed as he was cleaning rain gutters and he fell thirty-seven feet to the ground.

¶3    But this is not the first lawsuit the Kuhars have brought involving this incident. They previously sued Thompson and other defendants in New Jersey federal court, alleging that the harness was defective. That suit was unsuccessful. Thompson was dismissed from the case based on a lack of personal jurisdiction—and the Kuhars refiled their claims against Thompson here. Meanwhile, the other New Jersey defendants prevailed on a summary judgment motion after the federal court excluded the Kuhars' expert witness. Once the New Jersey case was dismissed, Thompson moved in the instant case to preclude the Kuhars from litigating the issue of whether the harness was defective.

¶4    The district court concluded that Thompson had shown the elements of issue preclusion were met. And this resulted in the dismissal of the Kuhars' claims. But the court of appeals reversed, concluding that the issue litigated and decided in New Jersey was not identical to the issue Thompson seeks to preclude here. *Kuhar v. Thompson Mfg. Inc.*, 2022 UT App 22, ¶¶ 9–10, 16, 506 P.3d 1200. Specifically, the court of appeals concluded that the New Jersey court had not resolved on the merits whether the harness was actually defective, but had determined only that (1) the expert report disclosed by the Kuhars was inadmissible, and (2) the Kuhars needed expert testimony in order to proceed on their claims. *Id.* ¶ 10. The court of appeals' decision is now before us.

¶5    On certiorari, we conclude that the elements of issue preclusion are satisfied here. As a threshold matter, we clarify that to determine the issue-preclusive effect of the New Jersey federal court's judgment in this case, the substantive law of New Jersey applies. Under that law, we conclude that the issue Thompson seeks to preclude the Kuhars from litigating—whether the harness was defective—was actually litigated and decided on the merits in the New Jersey court's summary judgment order. This is because, in general, a ruling that plaintiffs have not met their burden of proof functions as a determination on the merits. Accordingly, we reverse.

## BACKGROUND

¶6    Nicholas Kuhar was cleaning rain gutters in New Jersey when his safety harness failed, causing him to fall thirty-seven feet onto crushed concrete. He suffered serious injuries. Kuhar and his

wife, Julie, sued the companies involved in the harness's design, manufacture, production, and distribution in New Jersey state court. But the defendants removed the case to the United States District Court for the District of New Jersey.

¶7     Relevant here, the Kuhars asserted claims of design defect under the New Jersey Products Liability Act. The harness consisted of three component parts: "a 'micrograb,' a bolt, and a rope." The Kuhars alleged that the "bolt attached to the carabiner of the safety harness snapped," causing Kuhar's fall.

¶8     In the federal court, the Kuhars amended their complaint to add Thompson Manufacturing as a defendant, asserting that Thompson "advertised, promoted, sold, distributed, and otherwise introduced into the stream of commerce the safety harness." Thompson, whose principal place of business is in Utah, moved to dismiss the complaint for lack of personal jurisdiction. After about a year of jurisdictional discovery, the court granted Thompson's motion and dismissed it from the case. The Kuhars then initiated the present action in Utah, asserting claims of design defect, breach of warranties, negligence, and loss of consortium.

¶9     Meanwhile, in the New Jersey case, the Kuhars disclosed the report of their liability expert, Dr. Richard Lynch. Dr. Lynch opined that "the bolt would not have failed if not for the presence of two design defects and one manufacturing defect." Two of the remaining defendants filed motions to preclude Dr. Lynch's report and testimony. The court granted the motion, concluding that Dr. Lynch's report was inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993). The court determined that the report was unreliable, consisted of Dr. Lynch's "subjective belief or unsupported speculation," did not rely on scientific methods and procedures, was based on improper net opinions[1] and bald assertions, did not lay the proper foundation, "merely [told] the jury what result to reach," and did not contain sufficient quantitative data.

¶10    After successfully excluding the expert's testimony, the remaining defendants in the New Jersey case moved for summary judgment. The court granted the defendants' motions, concluding

---

[1] A net opinion is an opinion that contains "bare conclusions, unsupported by factual evidence." *Kuhar v. Petzl Co.*, Civ. No. 16-0395 (JBS) (JS), 2018 WL 7571319, at *4 (D.N.J. Nov. 27, 2018) (quoting *Worrell v. Elliot*, 799 F. Supp. 2d 343, 349 (D.N.J. 2011)).

that expert testimony was required for the Kuhars to establish their design defect claim and "[they] ha[d] none." Specifically, the court determined that the micrograb and bolt were "complex instrumentalities" under New Jersey law, meaning that "without the assistance of an expert[,] a jury is not able to adequately understand the relevant design considerations involved with [the] bolt and micrograb." The United States Court of Appeals for the Third Circuit affirmed the district court's decision.

¶11 After learning of the summary judgment ruling in New Jersey, Thompson moved for summary judgment in the instant case. It argued that because the New Jersey federal court had determined that the harness was not defective, the Kuhars should be precluded from relitigating that issue here. The district court ultimately agreed with Thompson and granted summary judgment in its favor. The Kuhars appealed.

¶12 The court of appeals reversed the district court's decision. *Kuhar v. Thompson Mfg. Inc.*, 2022 UT App 22, ¶ 1, 506 P.3d 1200. Applying Utah law, the court of appeals used the issue preclusion standard set out in *Buckner v. Kennard*, 2004 UT 78, 99 P.3d 842. *See Kuhar*, 2022 UT App 22, ¶ 9. *Buckner* states that to invoke issue preclusion, a party must prove that:

> (1) the issue decided in the prior adjudication is identical to the one presented in the instant action; (2) the party against whom issue preclusion is asserted was a party, or in privity with a party, to the prior adjudication; (3) the issue in the first action was completely, fully, and fairly litigated; and (4) the first suit resulted in a final judgment on the merits.

2004 UT 78, ¶ 13. The court of appeals concluded that Thompson could not establish the first and third elements. *See Kuhar*, 2022 UT App 22, ¶ 9. Specifically, the court reasoned that the issue Thompson seeks to preclude here—whether the harness was defective—is not identical to the issue that was actually decided in New Jersey. *Id.* ¶¶ 10, 12. The court concluded that the New Jersey court had decided only that the Kuhars' expert evidence was inadmissible, and they needed an expert to prove their claims. *Id.* ¶ 10. Consequently, the court of appeals held that the question of whether the harness was defective had not been decided or fully litigated in the New Jersey case. *Id.* ¶ 13.

¶13 Thompson petitioned for certiorari, and we granted its petition. We have jurisdiction under Utah Code subsection 78A-3-102(3)(a).

**STANDARD OF REVIEW**

¶14 "On certiorari, we review the court of appeals' decision for correctness, focusing on whether that court correctly reviewed the trial court's decision under the appropriate standard of review." *State v. Rushton*, 2017 UT 21, ¶ 9, 395 P.3d 92 (cleaned up). Whether issue preclusion bars litigation in a subsequent action is a question of law that is reviewed for correctness on appeal. *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 17, 16 P.3d 1214.

**ANALYSIS**

¶15 The question before us is whether the doctrine of issue preclusion bars the Kuhars from litigating the defectiveness of the harness in the instant case. Before addressing this question, however, we must first ascertain which forum's law is controlling. Because the previous case was litigated in New Jersey federal court, federal law governs the preclusive effect of that judgment. And where, as here, a federal court exercises diversity jurisdiction, federal law dictates that the law of the state in which the federal court sits controls. Accordingly, we conclude that New Jersey law governs the question before us.

¶16 Applying New Jersey law, we conclude that the elements of issue preclusion are satisfied here. We therefore reverse.

I. NEW JERSEY LAW GOVERNS THE ISSUE-PRECLUSIVE EFFECT OF THE FEDERAL COURT'S DECISION

¶17 The parties dispute which law should govern the question before us. The court of appeals applied Utah law, observing that "no party assert[ed] that [the court] should apply New Jersey law . . . . And in any event, no suggestion has been made that New Jersey law and Utah law differ in application." *Kuhar v. Thompson Mfg. Inc.*, 2022 UT App 22, ¶ 9 n.1, 506 P.3d 1200. On certiorari, Thompson asserts that federal common law applies. The Kuhars, on the other hand, argue that the court of appeals was correct in applying Utah law because "there is no discernible difference between Utah and federal common law on issue preclusion."

¶18 We clarify that New Jersey law governs the question before us, and we apply it in our analysis.[2] To make this

---

[2] The court of appeals was right that the rules governing issue preclusion in Utah and New Jersey are similar. *Compare Buckner v. Kennard*, 2004 UT 78, ¶ 13, 99 P.3d 842, *with First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 424 (N.J. 2007). And we

(continued . . .)

determination, we first turn to federal common law, which applies "when deciding if a federal court's decision has preclusive effect on a subsequent state court proceeding." *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 28 n.5, 194 P.3d 956; *see also Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law."). However, this does not end the choice-of-law analysis because federal common law incorporates different substantive rules depending on the type of jurisdiction exercised by the federal court.

¶19 The United States Supreme Court has not spoken definitively about which law governs the issue-preclusive effect of a decision of a federal court exercising diversity jurisdiction.[3] But the Court has directly answered the choice-of-law question in the context of claim preclusion, which provides guidance here. "In brief, claim preclusion applies to all claims growing out of the same facts that could have been brought, but issue preclusion applies only to those issues that were actually litigated and decided." *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 604 (1991). The Court has held that where a federal court exercises federal question jurisdiction,[4] federal law requires subsequent courts to

---

recognize that we have opted to apply Utah law in the past in such circumstances. *See, e.g.*, *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 28 n.5, 194 P.3d 956. But here, we provide guidance on the correct choice-of-law analysis in cases involving the issue-preclusive effect of the judgment of a federal court exercising diversity jurisdiction, because the potential sources of law in such cases may not always be similar to Utah's, and the jurisprudence in this area is not definitively settled.

[3] Diversity jurisdiction is a form of subject matter jurisdiction that allows federal district courts to have original jurisdiction over civil actions that (1) "involv[e] parties who are citizens of different states" and (2) have "an amount in controversy greater than a statutory minimum." *Diversity jurisdiction*, BLACK'S LAW DICTIONARY (11th ed. 2019). For the specific requirements of federal diversity jurisdiction, see United States Code title 28, section 1332.

[4] Federal question jurisdiction is a form of subject matter jurisdiction that allows federal district courts to have original jurisdiction "over claims arising under the U.S. Constitution, an act of Congress, or a treaty." *Federal-question jurisdiction*, BLACK'S LAW DICTIONARY (11th ed. 2019). For the specific requirements of federal question jurisdiction, see United States Code title 28, section 1331.

apply federal common law to determine the claim-preclusive effect of the federal judgment. *See, e.g.*, *Heck v. Humphrey*, 512 U.S. 477, 488 n.9 (1994); *cf. Haik v. Salt Lake City Corp.*, 2017 UT 14, ¶ 8, 393 P.3d 285 (recognizing *Heck*'s holding). Then, in *Semtek International Inc. v. Lockheed Martin Corp.*, the Court held that when a federal court sits in diversity, the law of the state in which the federal court sits governs the claim-preclusive effect of the federal judgment. 531 U.S. 497, 508 (2001); *cf. Haik*, 2017 UT 14, ¶ 8 (recognizing *Semtek*'s holding). In reaching its decision in *Semtek*, the Court reasoned that basing the applicable claim-preclusion law on the type of jurisdiction exercised by the federal court would prevent "forum-shopping and inequitable administration of the laws." 531 U.S. at 508–09 (cleaned up). As these cases involve only claim preclusion, many courts have grappled with whether to extend the Court's analysis in these cases to the issue preclusion context.

¶20 We ultimately conclude that the best approach is to do so, for two reasons. First, in *Taylor v. Sturgell*, which was decided after *Semtek*, the U.S. Supreme Court stated broadly that "[t]he preclusive effect of a federal-court judgment is determined by federal common law." 553 U.S. at 891. Although *Taylor* involved only claim preclusion, the Court engaged in a general discussion of both claim and issue preclusion. *See id.* at 891–93. And in stating that federal common law governs the preclusive effect of federal court judgments, the Court did not distinguish between issue and claim preclusion. *See id.* at 891. So, while *Taylor* is not dispositive as to issue preclusion, it at least suggests that the Court sees no distinction between the choice-of-law analyses for the two doctrines. Second, the rationale underlying the *Semtek* decision—the prevention of forum shopping and inequitable administration of the laws—applies equally in the issue preclusion context. Accordingly, we join other state and federal courts in concluding that the *Semtek* claim preclusion rule applies to issue preclusion as well.[5]

---

[5] For examples of state courts extending the claim preclusion choice-of-law analysis to issue preclusion, see *Garcia v. Prudential Insurance Co. of America*, 293 P.3d 869, 872 (Nev. 2013) (reasoning that *Semtek* applied to issue preclusion because *Taylor* discussed *Semtek* "in light of issues regarding both claim and issue preclusion"), and *Marshall v. Inn on Madeline Island*, 631 N.W.2d 113, 120–21 (Minn. Ct. App. 2001) (extending the *Semtek* rule to issue preclusion claims because "the *Semtek* holding rests on the constitutional obligation of state courts to respect federal

(continued . . .)

¶21   Under *Semtek*, when a federal court sits in diversity, the law of the state in which the federal court sits governs the preclusive effect of its judgments. 531 U.S. at 508; *see also Taylor*, 553 U.S. at 891 n.4. In this case, the federal court exercising diversity jurisdiction sat in New Jersey. Accordingly, we conclude that New Jersey's jurisprudence on issue preclusion governs the question before us.

## II. THE ELEMENTS OF ISSUE PRECLUSION ARE SATISFIED HERE

¶22   Applying New Jersey law, we conclude that the elements of issue preclusion are met here. Issue preclusion bars relitigation of "issue[s] of fact or law," *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 423 (N.J. 2007), and "applies only to those issues that were actually litigated and decided," *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 604 (N.J. 1991) (cleaned up).

¶23   However, issue preclusion does not bar relitigation of "every fact which may have been litigated in the prior action." *Mazzilli v. Accident & Cas. Ins. Co.*, 139 A.2d 741, 746 (N.J. 1958). Instead, it applies only to "matters or facts which were directly in issue," not matters or facts that were "merely collateral or incidental" to the judgment. *Id.*

¶24   Under New Jersey law, to establish issue preclusion,

> the party asserting the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*First Union Nat'l Bank*, 921 A.2d at 424 (cleaned up).

¶25   The parties do not dispute that the third, fourth, and fifth elements of issue preclusion are met here. The New Jersey federal

---

judgments" and "federalism principles apply equally to claim preclusion and issue preclusion"). For examples of federal courts extending the claim preclusion choice-of-law analysis to issue preclusion, see *Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137, 1144–46 (9th Cir. 2009), *NAS Electronics, Inc. v. Transtech Electronics PTE Ltd.*, 262 F. Supp. 2d 134, 143–45 (S.D.N.Y. 2003), and *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 706 (7th Cir. 2024).

court issued a final judgment on the merits. Whether the harness was defective was essential to the judgment in New Jersey. And the parties against whom Thompson asserts the doctrine, the Kuhars, were parties to the earlier proceeding.

¶26 But the court of appeals held that Thompson could not establish what New Jersey law identifies as the first and second elements of the test—that the issue Thompson seeks to preclude is identical to an issue decided in the New Jersey case and that the issue was actually litigated in that case. *See Kuhar v. Thompson Mfg. Inc.*, 2022 UT App 22, ¶ 16, 506 P.3d 1200. As noted, the issue Thompson seeks to preclude the Kuhars from litigating is whether the harness was defective. And the court of appeals concluded that whether the harness was defective is "not the same" as "the issues actually decided in the New Jersey litigation." *Id.* ¶ 10. The court of appeals reasoned that the only issues decided by the New Jersey court were "(1) that a particular expert's testimony, proffered by the Kuhars, was inadmissible under rule 702 of the Federal Rules of Evidence and applicable federal case law" and "(2) that without that expert's testimony, under New Jersey law the Kuhars could not satisfy their burden of establishing their product liability claims." *Id.* On this basis, the court of appeals concluded that the New Jersey court had not determined on the merits whether the harness was defective. *Id.* ¶ 12.

¶27 We come down differently on this analysis. To determine whether the issue Thompson seeks to preclude is identical to the issue decided in New Jersey, we must first identify what was decided in that case. The parties do not dispute that the issue of whether the harness was defective was present, in identical form, in the New Jersey case. After all, both cases involve the same incident, the same harness, and substantively similar claims that depend upon the Kuhars proving that the harness was defective.

¶28 The harder question is whether this issue was decided in the New Jersey litigation. The court of appeals concluded that in the New Jersey court's summary judgment order dismissing the Kuhars' claims against the remaining defendants, that court "never grappled with the merits" of whether the harness was defective. *Id.* Instead, "it decided the case against the Kuhars not because it made a factual determination that the product was not defective but because it determined that the Kuhars could not satisfy their burden of proof on that point without expert testimony." *Id.*

¶29 But generally, a summary judgment ruling that plaintiffs have not met their burden of proof functions as a determination on

the merits. The relevant section of the Restatement of Judgments, which New Jersey has adopted, discusses when an issue has been decided. *See Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1009–11 (N.J. 2006) (recognizing and adopting the general rule and exceptions for issue preclusion as set forth in sections 27 and 28 of the Restatement (Second) of Judgments); *see also Barker v. Brinegar*, 788 A.2d 834, 839–40 (N.J. Super. Ct. App. Div. 2002) ("New Jersey courts follow the doctrine of collateral estoppel or the rule of issue preclusion described in the Restatement of Judgments." (cleaned up)). That Restatement section explains that "[a] determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof." RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (AM. L. INST. 1982); *see also Allesandra v. Gross*, 453 A.2d 904, 909–10 (N.J. Super. Ct. App. Div. 1982) (quoting and applying the same).

¶30 And we read the New Jersey court's summary judgment order to function in such a manner. When that court ruled that the Kuhars could not proceed with their design defect claims without expert evidence, it effectively determined that the Kuhars had not met their burden to prove the existence of a design defect. And a merits determination "may be based on a failure . . . of proof." *Id.*

¶31 But we can understand why the court of appeals viewed the New Jersey ruling differently. In its order, the New Jersey court used narrow language when describing its decision, which seemed to draw a distinction between a dismissal based on a failure of proof and a dismissal based on the lack of an expert. The court explained,

> Defendants make two arguments in relation to [the Kuhars' design defect theory]: (1) [the Kuhars] cannot make a prima facie case for design defect, therefore, defendants' summary judgment motions should be granted; and (2) [the Kuhars'] claims are not supported by expert testimony, therefore, summary judgment should be granted. *The Court finds defendants' first argument need not be addressed because the second argument disposes of all design defect claims against all defendants.* In short, [the Kuhars] cannot pursue a design defect theory against defendants without supporting expert testimony.

*Kuhar v. Petzl Co.*, Civ. No. 16-0395 (RMB) (JS), 2019 WL 6211544, at *4 (D.N.J. Oct. 21, 2019) (emphasis added), *report and recommendation adopted*, 2019 WL 6130741 (D.N.J. Nov. 19, 2019).

¶32   But the court went on to conclude that, based on the lack of an expert, the Kuhars could not "make a prima facie case of design defect." *Id.* at *5. While some of the court's language seemed to narrow its reasoning to more technical grounds, we ultimately conclude that the court's grant of summary judgment based on a failure of proof functioned as a merits determination that the Kuhars could not show the harness was defective. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (AM. L. INST. 1982).

¶33   Turning to the second element of issue preclusion, the court of appeals held that the existence of a design defect had not been fully litigated because the New Jersey court did not "hold[] a trial to weigh the evidence and make a finding as to the alleged defective nature of the product—because it determined that the Kuhars' overarching claim failed on what amounted to a procedural ground." *Kuhar*, 2022 UT App 22, ¶ 13. Thus, the court of appeals characterized the New Jersey court's summary judgment ruling as being premised on "nonmerits procedural grounds" akin to striking a party's answer as a sanction for discovery abuses or "because a party fails to appear at a hearing." *Id.* ¶ 14.

¶34   Although the Kuhars' case did not proceed to trial in New Jersey, we conclude that the existence of a design defect was actually litigated there. An issue is actually litigated when it "is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (AM. L. INST. 1982). Importantly, the relevant section of the Restatement clarifies that an issue may be considered "submitted and determined" based on a

> motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment . . . , a motion for directed verdict, or their equivalents, as well as on a judgment entered on a verdict. A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof.

*Id.*

¶35   It is not disputed that the Kuhars raised the issue that the harness was defective through the claims in their pleadings. The New Jersey litigants then conducted discovery, and the Kuhars had the opportunity to gather evidence to prove there were defects in the harness. They selected an expert, Dr. Lynch, to help them make this showing.

¶36   The defendants then submitted the issue for determination in motions to exclude and for summary judgment. First, some of the defendants moved to exclude the Kuhars' expert report. And the evidence did not hold up. The federal court found that "Dr. Lynch's report and the opinions contained therein leave too large a gap between the data presented and the conclusions rendered, and consequently, it fails to satisfy *Daubert*'s reliability and fit requirements." *Kuhar v. Petzl Co.*, Civ. No. 16-0395 (JBS) (JS), 2018 WL 7571319, at *4 (D.N.J. Nov. 27, 2018). So the court excluded it entirely. Then, in ruling on the summary judgment motions, the court concluded that without any expert evidence, the Kuhars could not prove their design defect claims. And as we have explained, a dismissal based on a failure of proof is a form of merits determination.

¶37 In light of this, we conclude that in the New Jersey litigation, the issue of whether the harness was defective was raised, submitted for determination, and determined. Thus, the issue was actually litigated in New Jersey.

¶38 Accordingly, because the other elements of issue preclusion are not in dispute, we conclude that the elements of issue preclusion are met here.

## CONCLUSION

¶39   Federal law governs the issue-preclusive effect of a federal court decision. In cases like this one, where a federal court exercises diversity jurisdiction, we conclude that federal law dictates that the substantive issue-preclusion jurisprudence of the state in which the federal court sits controls. Here, that was New Jersey.

¶40   Applying New Jersey law, we conclude that Thompson has satisfied the elements of issue preclusion. Specifically, we conclude that the issue of whether the harness was defective was actually litigated and decided in the New Jersey federal case. And as the other elements of issue preclusion are not in dispute, we reverse.